IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

SHONA CHRISTY                                                                                          PLAINTIFF

VS.                                     CASE NO. 1:10-CV-01040

ACHIEVERS OF LOUISIANA, INC.                                                          DEFENDANT

## ORDER

Before the Court are Defendant Achievers of Louisiana, Inc.'s Motion for Summary Judgment (ECF No. 25) and Plaintiff Shona Christy's Counter Motion for Summary Judgment. (ECF No. 28). Plaintiff has responded (ECF No. 28),[1] and Defendant has replied. (ECF No. 32). Defendant has also responded to Plaintiff's counter motion. (ECF Nos. 32 & 40). The motions are ripe for the Court's consideration. For the following reasons, the motions will be granted in part and denied in part.

## BACKGROUND

Storms damaged the Plaintiff's A-frame house in February 2008. Plaintiff filed and settled a claim with State Farm Insurance, and, in April 2008, chose the Defendant to make the covered repairs. The parties' contract required the Defendant to replace the damaged metal roof system, replace the damaged siding, replace the damaged windows, and replace the damaged fascia. In mid-August 2008, more rain caused water damage to the Plaintiff's house. The Defendant completed its repair job shortly after that, on August 27, 2008. In September 2009, Plaintiff's house again experienced steady rains. Plaintiff discovered leaks in the house, and

---

[1] At the Court's request, Plaintiff has filed an amended brief in support of her response. (ECF No. 38-1). The amendment consists solely in adding citations to Plaintiff's references to the record.

Defendant came out again to make further repairs. Those repairs, however, were not enough to stop the leaks. Plaintiff claims that her house is now severely damaged, and that Defendant is to blame.

The subject of greatest controversy in this case is the replacement siding material. Plaintiff wanted to replace the damaged metal-shake siding with an identical product. That product was unavailable, first because the Defendant could not locate it, and then because of financial constraints. At Defendant's office, Plaintiff saw a sample of Nailite, a vinyl shake that, like her original shake siding, looks like wood shakes. Plaintiff further researched the Nailite product, and eventually the parties agreed to use it. Who is ultimately responsible for the decision to use the Nailite is in considerable dispute. Plaintiff contends that, either because it was not designed for the use to which the parties put it, or because the Defendant wrongly installed it, or both, the use of Nailite bears much of the blame for her damages.

Plaintiff filed suit in Ashley County, Arkansas Circuit Court on May 5, 2010. The Defendant removed to this Court on June 3, 2010, relying on diversity jurisdiction. The Defendant is now before the Court requesting summary judgment on all of Plaintiff's claims.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## DISCUSSION

Plaintiff's amended complaint (ECF No. 9) makes a breach-of-contract claim.[2] (ECF Nos. 14 & 15). Under the breach-of-contract umbrella, Plaintiff makes claims for breach of the warranties of sound workmanship, habitability, merchantability, and fitness for a particular purpose. Upon consideration, the Court finds that Defendant is entitled to summary judgment on

---

[2] Defendant argues that a negligent-construction claim is made in the amended complaint. (ECF No. 25-2, at 2). The Court disagrees. Plaintiff asks for damages in the amount of "the cost to the plaintiff to repair the damage to her home as a result of the defendant's *breach of contract*…." (ECF No. 9, at 3) (emphasis added). Where a party seeks damages "for the cost of correcting the defect," the complaint "states a proper cause of action for breach of contract." *Bankston v. Pulaski Cnty. Sch. Dist.*, 281 Ark. 476, 480, 665 S.W.2d 859, 862 (Ark. 1984); *see also Curry v. Thornsberry*, 354 Ark. 631, 643, 128 S.W.3d 438, 444 (Ark. 2003).

Plaintiff's habitability and merchantability claims. The Court also finds, however, that there are too many disputed material facts to grant summary judgment on Plaintiff's workmanship and fitness claims.

### I.  Warranty of habitability

Plaintiff argues that Defendant owed her a warranty of habitability on her repair. In Arkansas, "there is an implied warranty of…habitability in the sale of a new home by a seller who is also the builder." *Curry v. Thornsberry*, 354 Ark. 631, 642, 128 S.W.3d 438, 443 (Ark. 2003). This case concerns the repair of an existing home—not the sale of a new one. Therefore, Defendant is entitled to summary judgment on Plaintiff's warranty-of-habitability claim.

### II.  Warranty of merchantability

Plaintiff also argues that Defendant owed her a warranty of merchantability on the Nailite shakes. The warranty of merchantability applies to goods that are not suited for their ordinary purpose. *Lee v. Martin*, 74 Ark. App. 193, 199, 45 S.W.3d 860, 864 (Ark. Ct. App. 2001). Plaintiff argues that Defendant used the Nailite as a roofing material, and admits in her amended complaint that the "material used by the defendant was not warranted as roofing material." (ECF No. 6, at 2). Because the material was, by Plaintiff's admission, not used for its ordinary purpose, the warranty of merchantability does not apply. *See Flippo v. Mode O'Day Frock Shops of Hollywood*, 248 Ark. 1, 3, 449 S.W.2d 692, 693 (Ark. 1970) (warranty of merchantability was not breached where pants harbored a brown-recluse spider, because "[t]he pair of pants itself was fit for the ordinary purposes for which stretch pants are used; there was nothing wrong from a manufacturing standpoint"). Defendant is thus entitled to summary judgment on Plaintiff's warranty-of-merchantability claim.

### III. Workmanship warranty

The contract in this case guaranteed that the work would be done "in a workmanlike manner in accordance with standard practices." (ECF. No. 25-5). Moreover, in Arkansas, "[t]he general rule is that a contractor or builder impliedly warrants that the work he undertakes will be done in a good and workmanlike manner...." *Carroll-Boone Water Dist. v. M & P Equip. Co.*, 280 Ark. 560, 575, 661 S.W.2d 345, 353 (Ark. 1983). However, "where a contact contains an express warranty on the subject of an asserted implied warranty, the former is exclusive and there is no implied warranty on that subject." *Bullington v. Palangio*, 345 Ark. 320, 327, 45 S.W.3d 834, 838 (Ark. 2001) (citing *Carter v. Quick*, 263 Ark. 202, 563 S.W.2d 461 (Ark. 1978)) (internal citation omitted). Because the Plaintiff is relying on both an express and an implied warranty of workmanlike conduct, the express warranty becomes exclusive.

To do a job in a workmanlike manner is to "do the work as a skilled workman should do it." *Fitzgerald v. La Porte*, 64 Ark. 34, 40 S.W. 261, 261 (Ark. 1897). The question here is whether Defendant's work "was done in a manner generally considered skillful by those capable of correctly judging such work...." *Id.* at 262. A contractor "must use reasonable judgment," and his use of "customary methods is a matter to be considered, but that standard does not necessarily meet the test of ordinary care." *Dixon v. Ledbetter*, 262 Ark. 758, 760, 561 S.W.2d 294, 295 (Ark. 1978). A contractor is held to the standard of a reasonable person and a reasonable contractor, but when the standards diverge, he is held to the stricter of the two. Ark. Mod. Jury Instr. Civ. 1203 cmt. "The issue of completion of repair work in a satisfactory manner [is] clearly one of fact...." *United Bilt Homes, Inc. v. Sampson*, 310 Ark. 47, 50, 832 S.W.2d 502, 503 (Ark. 1992).

Plaintiff has provided the Court with enough evidence to survive summary judgment on this claim. Through her expert, Mike Worth, Plaintiff has shown evidence that Defendant's work fell short of the industry custom governing her repairs. Worth started installing metal roofs as a subcontractor in 1980, and before that he installed vinyl siding. (ECF No. 28-4, at 1). In his deposition, Worth testified to several sub-standard features of Defendant's Nailite installation:

| | |
|---|---|
| [Defendant's attorney]: | And what did you identity as the problem areas in the siding application? |
| [Worth]: | Improper use of field form flashings would be one. |
| [Defendant's attorney]: | What does that mean, field form flashings? |
| [Worth]: | Flashings that they kind of made on the job site, like sidewall flashings were incomplete. There's no hem to keep the water from drifting back up underneath the Nailite siding and coming inside the roof and getting trapped behind the siding and the R panel roofing substrate. |

********

| | |
|---|---|
| [Defendant's attorney]: | Okay. So let me ask you this. Your preference would have been to use the decking, but in the absence of using decking, would the – I forgot what they're – would the use of the boards going across be another acceptable alternative? |
| [Worth]: | Not – I wouldn't do it that way. |
| [Defendant's attorney]: | Okay. And why not? |
| [Worth]: | Well, for one, I don't know exactly how they – the boards seemed to be loose, as I recall the first time I looked at it, and they're not consistence – there not consistent in how far they project from the R panel itself. If you look at the shingle rows, some of them are actually at a different slope and then the row above it would be back and forth like this instead of being consistent and smooth like you would have with decking under it.<br>(ECF No. 28-4, at 16-17; 19-20). |

6

Moreover, the Servpro technician who examined Plaintiff's house found that "[t]he material that was used [as] a roof covering is rated for vertical walls ONLY, and is not rated for use as a roof covering." (ECF No. 25-16, at 2) (emphasis original). The technician also found that "[t]here are numerous voids, up to approximately two inches wide, between individual pieces of roof covering. This will allow the intrusion of any wind-driven rain into the walls." (ECF No. 25-16, at 2).

From these excerpts, the Court finds a legitimate factual dispute about whether Defendant installed the Nailite product in accordance with a reasonable-contractor standard. Summary judgment on Plaintiff's workmanship-warranty claim is therefore inappropriate.

**IV.     Warranty of fitness for a particular purpose**

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified…an implied warranty that the goods shall be fit for such purpose." Ark. Code Ann. § 4-2-315; *Berkeley Pump Co. v. Reed-Joseph Land Co.*, 279 Ark. 384, 398, 653 S.W.2d 128, 133 (Ark. 1983).

The warranty of fitness arises under Article Two of the Uniform Commercial Code. "Article Two…, which applies to the sale of goods, does not apply to the sale of realty or services." *Hodges v. John F. Jenkins Contracting, Inc.*, 98 Ark. App. 125, 127, 252 S.W.3d 152, 154 (Ark. Ct. App. 2007). Defendant argues that Plaintiff's warranty-of-fitness claim is precluded as a matter of law because the parties' contract is one for services rather than for goods, and thus Article Two doesn't apply. The Court disagrees.

"[T]ransactions involving goods and services are commonly known as mixed or hybrid contracts." *Golden v. Den-Mat Corp.*, 276 P.3d 773, 791 (Kan. Ct. App. 2012).  Courts use the

"'predominant purpose' test to determine when…the U.C.C. applies to hybrid transactions that involve both the sale of goods and the provision of services." *Vesta St. Bank v. Ind. St. Bank of Minn.*, 518 N.W.2d 850, 854 (Minn. 1994); *U.S. Neurosurgical, Inc. v. St. Luke's Cancer Inst., L.L.C.*, 328 S.W.3d 234, 237 (Mo. Ct. App. 2010). The predominant-purpose test asks whether the contact's thrust or purpose "is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom)." *AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998) (quoting *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir. 1974)).

Looking into a contact's purpose requires discerning the parties' intent. "In attempting to discern the real character of a transaction, the trial court should consider all of the evidence and focus on the intent of the parties in the light of all attendant circumstances." *Hodges v. John F. Jenkins Contracting, Inc.*, 98 Ark. App. 125, 128, 252 S.W.3d 152, 154 (Ark. Ct. App. 2007). The parties' intent, and thus the contract's purpose, is mostly a fact question. *Acker Constr., LLC v. Tran*, 2012 Ark. App. 214, at 9, ___S.W.3d___,___; *Id.*

According to Defendant, it was "hired to remove the existing shake siding and replace that with a material that was acceptable with [Plaintiff]." (ECF No. 25-7, at 2). Defendant's invoice is itemized according to what parts of Plaintiff's house were being "removed and replaced"; there is no itemization for the goods involved. (ECF No. 9, at 4). On the other hand, the invoice was updated to include a $6,600 upcharge for using Plaintiff's preferred shake-siding product. (ECF No. 9, at 4). The parties are at odds about who chose the Nailite shakes, but the pleadings show that the choice of shake material was an important part of the contract either way. Plaintiff did not want a mere roof replacement; she wanted her roof replaced with a specific product, and was willing to pay extra for it.

On this evidence, the Court cannot confidently decide the predominant purpose of the contract. The Court finds that the parties' intent in this case is a disputed fact question better left to the jury. That means that the Court cannot at this stage rule out Plaintiff's claim that the UCC applies to her contract.

Nor do the undisputed facts settle the question whether the warranty was breached. The facts surrounding the Nailite-shake purchase are firmly in dispute. Plaintiff contends that she chose the Nailite shakes essentially at Defendant's initiation and instigation. Defendant contends that Plaintiff played the larger part in the decision. The facts surrounding the decision to purchase the Nailite shakes will in large part determine whether the warranty of fitness applies and was breached. Those facts are too disputed for the Court to enter summary judgment on Plaintiff's warranty-of-fitness claim.

### V.     Whether Plaintiff supplied defective plans or specifications

Defendant contends that it is not liable for breaching any warranties because Plaintiff allegedly supplied the plans and specifications on which it relied. It cites cases from at least eleven jurisdictions for the proposition that a contractor who relies on a customer's defective plans is not responsible for damage caused solely by those plans. (ECF No. 25-2, at 5). Notably, Defendant does not cite a single Arkansas case for the rule. The relatively recent Arkansas case of *Graham Constr. Co. v. Earl*, 362 Ark. 220, 226, 208 S.W.3d 106, 110–11 (Ark. 2005), however, acknowledges the defective-plans rule. The Arkansas court also noted that "'a competent and experienced contractor cannot rely upon submitted specifications and plans where he is fully aware, or should have been aware, that the plans and specifications cannot produce the proposed results.'" *Id.* (quoting *Housing Auth. v. E.W. Johnson Constr. Co.*, 264 Ark. 523, 533, 573 S.W.2d 316, 322 (Ark. 1978)).

Like the other issues in the case, the facts surrounding the defective-plans rule are too disputed for the Court to rule on. There is considerable factual variance in the record about whether Plaintiff supplied plans at all, and whether Defendant was a contractor that should have been aware that the plans were flawed.

## CONCLUSION

For the above reasons, the Court finds that Defendant's Motion for Summary Judgment (ECF No. 25) should be and hereby is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's habitability and merchantability claims are **DISMISSED WITH PREJUDICE**. Plaintiff's workmanship and fitness claims remain. Plaintiff's Counter Motion for Summary Judgment (ECF No. 28) should be and hereby is **DENIED**.

IT IS SO ORDERD, this 20th day of July, 2012.

/s/ Susan O. Hickey
Hon. Susan O. Hickey
United States District Judge